My name is John Bash, representing the United States out of the Western District of Texas. This Court should reverse the order of the District Court dismissing the indictment in this case, essentially for three buckets of reasons. I think we have about eight alternative arguments, but you could classify them into three different buckets. The first bucket is that the NTA, the notice to appear in this case, was not invalid for the purpose of invoking the immigration judge's jurisdiction. The second bucket is that even if it was defective, for a number of reasons, that would not have been a jurisdictional defect. And we have three alternative arguments on that ground. And then the third bucket is that even if the Court were to conclude or to reserve the question of whether the immigration judge had jurisdiction to issue the removal order, that would not be a bar to a 1326 prosecution in this case. So if the panel has questions about the mootness objection, I'm happy to answer those. Otherwise, I'll go right into those three buckets. The first bucket, as I said, was that the NTA in this case was not defective for the regulatory purpose at issue. Under the regulations, 8 CFR 1003.14 or .15, an NTA does not need to include a date and time. As we know, in the Pereira case, the Court held an NTA that does not include, the Supreme Court held that an NTA that does not include a date and time is ineffective for one particular statutory purpose because the statutory section at issue expressly cross-referenced the distinct statutory definition of NTA. What's at issue here is very different. It's only a regulation that says an NTA must be filed with the immigration court to invoke that court's jurisdiction. And the regulatory definition does not require a date and time. Nothing in the statute, Your Honors, speaks to how to vest jurisdiction in an immigration court. There's nothing in the regulation that cross-references the statutory definition of NTA. And so in our view, the district court erred in saying that the immigration judge lacked jurisdiction or that the NTA was defective for that purpose. Did we already decide this in Mauricio Benitez? You may have, Your Honor. Your Honor included a footnote. I know you're very familiar with the opinion, Judge Elrod, because you wrote it. Included a footnote. In that case, the NTA, like here, did not have a date and time. The Court had a footnote that said that's not a problem under Pereira, and it cited one district court case that ruled our way on the very issue before the court here. I think it would be fair to say this Court has decided that issue, although it was a footnote in a case that's not brief, so I don't know that that's an inevitable conclusion in all candor. So, of course, if the Court believes it's already decided this issue, we're very happy to rest on that, but I'm also happy to provide reasons why we think that disposition is correct. Can you back up to the mootness in Villamonte-Marquez issue? Do you think there's a material difference based on the fact that Villamonte-Marquez dealt with a conviction? In this case, we're dealing with an indictment. We don't, Your Honor, because that distinction, essentially between the government losing in the district court and the government losing in the court of appeals and then appealing to the Supreme Court, does not map on either to the specific reasoning and holding of Villamonte-Marquez or to more general mootness principles. So all that's required to keep a case alive when the government or any party appeals is that the party appealing has some concrete interest, however small the Supreme Court has said an identifiable trifle is enough. So is Sarmiento-Rosa abrogated? Well, I think the Court could think about it two ways. I don't know that the Court has to go that far if the Court's reluctant to say this case has been either almost explicitly overruled in Villamonte-Marquez when it said, hey, this case supports the side we're rejecting or implicitly overruled by the decades of mootness precedent since then. The Court could say this. The Court could say that in Sarmiento-Rosa, there was a very unusual situation in which the defendants had been interdicted on the high seas, in other words, outside U.S. territory, arrested outside U.S. territory, brought here involuntarily, and then deported before the conclusion of the appeal. And maybe in that narrow set of facts, the key holding of Villamonte-Marquez might not apply, which is that there's a sufficient likelihood these defendants will wind up back in the United States to keep the government's interest in the case alive. You might say, well, if defendants never voluntarily entered the United States before, maybe that's not true. We could at least reserve the question of whether Sarmiento-Rosa is no longer good by saying at least in the situation here and in the situation in Villamonte-Marquez where the defendant has voluntarily entered the United States before, that's the very crime at issue. In that case, the government certainly has an interest in preserving an indictment because there's two very concrete things that does for the government. One, if this defendant, for example, reenters for a sixth time, there's already an indictment in place. The government can arrest him, prosecute him, doesn't need to secure a new indictment, doesn't need to risk a new grand jury, wouldn't indict. Two, it tolls the statute of limitations, which is about as concrete as it gets. If he's arrested more than five years from now, we could lose the ability to prosecute him because the statute of limitations is not told. So under modern principles where we just need an identifiable trifle, it's hard to see how a holding that said we don't have that kind of interest, minimum interest here, could make sense. So I'm happy to answer more questions from the panel about mootness. Otherwise, I'll shift back to the merits arguments. I think we've talked about our first argument that the NTA here is not defective. We had our druthers. I think we'd love for the panel to decide on that ground, because that would solve this issue not only for criminal cases like this one, but for the immigration cases in which it arose. I'll just mention to the panel that six of the seven circuits to address this now have come out our way, four of them in precedential opinions. The Seventh Circuit, which happens to be the Seventh Circuit, ruled our way as well on the overall issue, but on a different ground. So no circuits have gone against us. So this Court would be creating — Is it just that it's not jurisdictional? That's the position of the Seventh Circuit. We haven't taken a — Do you have a position on it, one way or the other? We don't. I mean, the BIA has considered it jurisdictional, and the text of the regulation says jurisdiction. But it's not really jurisdiction because it's not from the statute. I think that's exactly correct, Judge Elrod. Even if it's jurisdictional in some sense of that term, it's not jurisdiction like we think of Article III subject matter jurisdiction. The most obvious way I think that distinction materializes is that it can be forfeited by the parties. So we've — this Court held that in an unpublished case called Sohani. The Seventh Circuit, in a published decision, has issued the — called Kereshi with a Q, has issued the primary opinion in this area. Those objections can be forfeited. That's also a way for this Court to resolve this case. Pedroza did not argue in the immigration court that it lacked jurisdiction. He conceded removability. Jurisdiction of an article or of an administrative tribunal can be forfeited. He didn't raise that. So this — if it is a claims processing rule, as the Seventh Circuit said, this is an alternative to the six other circuits going the other way or the other circuits going the other way on the cure issue. Just for shorthand, the question is, have they not proceeded timely? You know, claims processing rules can be waived by the person who would be normally asserting them. Has the government maintained its claims processing rule status as such and said that they've been untimely? Have we argued that? We've argued in this case that he didn't raise it below. So that's our — That would be the — okay. And I think what Your Honor is getting at is there's not a lot of daylight, really, between one of our positions and the Seventh Circuit's decision. The Seventh Circuit said it's a claim processing rule, and so it can be waived. Our position is that because this is an administrative tribunal, even if it's called jurisdictional in a sense, it can be forfeited when the alien doesn't raise it. So that would be a ready way for this court — So your forfeited rule argument, all of that, is the same as what you would say in the claims processing rule? Yes, it's the same. You would make that argument to the Seventh Circuit, and you make it in the forfeit jurisdiction context to us. Correct. Correct. Slightly different characterizations. They say claim processing. We say even if jurisdictional, it can be forfeited. You get to the same place. What about the exhaustion requirement issue? So that's what I would call the third bucket, which is to say, I know there's so many alternatives, it's lost in my own mind, but even if the court concludes or reserves the question of whether the immigration judge had jurisdiction to issue the removal order, is that a bar to a 1326 prosecution 15 years later? And under 1326d and the Supreme Court's decision in Mendoza-Lopez, a 1326 defendant challenging the validity of a removal order has to satisfy three threshold requirements. One is you have to exhaust administrative remedies. Two is judicial review couldn't have been available. And three is there was a violation of fundamental fairness. In addition, this Court has said you need to show prejudice for the due process violation. On the first of those requirements, a panel of this Court that I'm sure this panel is very familiar with, just last month in a case called Perales, Judge Elrod, you were on the panel, said to a defendant, and we've provided a 28-J letter with this case, a case called Perales, said that a defendant in a 1326 challenging his removal order as, quote, void ab initio, very similar to this case, could not be heard to make that claim in a 1326 prosecution because he had not exhausted administrative remedies before the immigration court. So he had not sought BIA review of the immigration judge's decision. It's really exactly parallel to this case. He was arguing that it was void ab initio for a different reason, but he was saying this is so void, it was void at the outset, that I don't even have to satisfy the administrative exhaustion requirement of 1326d-1. And a panel of this Court in, I believe, a published opinion said, no, you still have to satisfy the administrative exhaustion requirement even if you're arguing that the removal order was void ab initio. That case is on all fours with this case. If this panel were to resolve this one on that ground, that would resolve this issue for all of the 1326 cases in which it is raised. It would not resolve it for immigration cases in which it's raised because the 1326 issue is not at issue in a straight immigration appeal. So that's one ground to resolve it. But we really went under any of those factors. Under 1326d-2, judicial review was available. He was advised orally of his appellate rights. He consciously waived them. There was a colloquy with the immigration judge in which he said he understood his rights. He was told he could appeal. He didn't do it. Judicial review was available. Fundamental fairness, I mean, maybe this is the most significant kind of big-picture point here. He showed up at his immigration hearing. He was advised of his rights. He conceded removability. There was no unfairness here because he was told about the hearing in a different document than the notice to appear. And just one way to conceptualize that is, suppose the statute just said there's a notice to appear that doesn't have a date and time, and then you get a notice to hearing that tells you the date and time. Would anyone think that that process violated due process because you're told when the hearing is in a second document? Well, if the answer is no, then it's hard to see why what happened here violated fundamental fairness. And then finally, the prejudice inquiry that this Court's required, really either way you think of prejudice, I think there's two ways to think about it. There was no prejudice. The way we would think about it is, what if the date and time had been included on the notice to appear? If the date and time had been included on the notice to appear, he would have been removed. He conceded removability. He was an aggravated felon under the law at the time, and he would have been removed. The way I think the district court thought about prejudice, which we would not do but gets to the same place, is what if the district court had properly dismissed for lack of jurisdiction? And again, we don't agree that he lacked jurisdiction, but on the district court's view, what if the district court, I mean what if the immigration judge had dismissed for lack of jurisdiction? Well, DHS just would have issued a corrected notice to appear with the date and time, and he would have been removed. So there was really no prejudice. So really all four factors, which we only need to win one on, under the 1326 analysis, we should prevail here. I'm happy to take more questions. If not, I'll just mention one more aspect of this case. Again, this is probably the eighth alternative argument, so the court doesn't have to reach it, but it might be systematically important for other cases, so I'll just mention it. Before Pereira, this court had approved what some courts call a two-step process, meaning the notice to appear could be issued without a date and time, and then the notice of hearing could have a date and time later, and it, in some sense, perfects the notice to appear. Some, the other side has argued, and the Ninth Circuit has held now, that that process is no longer good under Pereira. In our view, that is incorrect. In Pereira itself, there was no notice to appear, notice of hearing issued. The question was just whether the defective notice to appear told the period of continuous presence for the stop-time rule. So the court didn't consider what is really a distinct question, which is whether if some months later a notice of hearing were served that did have the date and time, whether the period would be told at that point. That's a separate question. How is that all that different from the cure cases that have the subsequent notice, that have the right date?  This is the cure point, Your Honor. I'm sorry. This is the cure point I'm making. I'm only arguing that Pereira didn't address the cure point. But a number of circuits have held that the cure is okay. They have. Except for the Seventh Circuit. And the Ninth Circuit now — The Ninth Circuit has now said the cure is not okay. Under Pereira. We provided the 28J letter. It's a case called Lopez. It overruled a case called Popa. But we just think that analysis is incorrect. It's perfectly possible, I think maybe even likely, that the Supreme Court, when confronted with that next case, whether the notice of hearing will toll the stop-time rule once it's provided, may well say yes to that. At minimum, they haven't decided it. And in a case called Gomez-Palacios, this Court already decided that that's valid, that hasn't been overruled by Pereira. So, again, we don't think the Court — that's a ground that wouldn't apply to the whole realm of these cases. So we'd prefer the Court just hold, if we had our druthers, that the notice to appear was not defective for this purpose. But this is another alternative. The Court could say, well, it was cured or perfected by the notice of hearing. If there are no further questions at this time, I'll reserve the balance of my time. Thank you. Thank you. May it please the Court. Kristin Kimmelman for Mr. Carlos Javier Pedrosa Rocha. Mr. Pedrosa first asked this Court to find that it does not have jurisdiction over this appeal, but if the Court does reach the merits, then he asks for affirmance of the district court's order. Now, with regard to mootness, the facts of this case really are on point with Sarmiento-Roso. There was a motion to dismiss that was granted by the district court, and then the defendant was deported. And on appeal in Sarmiento-Roso, this Court held that it was moot, because even if it were to find in the government's favor, the remedy would just be a pending indictment, and there would be no defendants there to face that indictment. And this was not abrogated by Villamonte-Marquez, because in that case it's materially different that there was a conviction that would have been reinstated. And the Supreme Court recognizes there's a presumption of collateral consequences to convictions, and that's what was at issue in Villamonte-Marquez. Now, in its footnote where it addressed the Sarmiento-Roso argument, it simply said it wasn't convinced in these circumstances, and it mentioned three different reasons. One was that because the defendants could be extradited. That's not a possibility here. The other was the collateral consequences, which an indictment's not going to have. And the last was if they happened to be back in the United States, then they could be imprisoned. It didn't specifically say that that was necessarily an unlawful act. Perhaps that was presumed. But since then, in Spencer v. Kenma, the Supreme Court has made clear that it's not going to presume Article III controversy based on unlawful acts. And to quote them, we assume that respondents will conduct their activities within the law and so avoid prosecution and conviction. So in Spencer v. Kenma, the issue was a revocation that had already been terminated to the end and whether the habeas petitioner could still challenge it. And one of the arguments he raised was it could raise my sentence in a later criminal proceeding, and the Supreme Court said we're not going to assume you're going to go out and commit another crime, and then this is going to become a relevant life controversy. And even under the general mootness principles that the government talks about, there needs to be an injury traceable to the defendant. It's not just enough to correct, I guess, the injury that was caused by the court of dismissing the indictment to send it back to have a pending indictment waiting for Mr. Pedrosa if he were to return. There has to actually be redress for the alleged injury of the unlawful illegal reentry. And the government isn't going to get that by having a pending indictment. And so for those reasons, we believe that the issue is moot. And if the court were to try to that, I'm sorry, we also do not think that the capable of repetition but evading review doctrine would apply here because it's not an exceptional situation. The issue, the core issue, is getting reviewed in numerous cases, and even as the government mentions in their reply brief, there are defendants who are subject to government appeals that are still in the United States. So it doesn't meet that first prong of the general test that it's always going to be too short of a time from the dismissal to the deportation of that client. There are other cases where this issue could be live. And so we would urge the remedy that's in Sarmiento Rosso vacating the order, remanding, and directing dismissal of the indictment as moot. Now, as opposing counsel mentions, this case does raise important issues that touch on many other cases, so I definitely want to talk about the merits. The court went out of its way to discuss the Sarmiento Rosso and to cast significant doubt on it. It went out of its – your Honor is correct that it did, that it didn't find it applicable here. So I guess we would first say the court is bound by Sarmiento Rosso. But even if the court finds Sarmiento Rosso has been abrogated, I still believe that this issue is moot because the government's only actual redress depends on Mr. Pedrosa committing an unlawful act. And to the extent that Villamonte-Marquez suggests that that's enough for Article III jurisdiction, Spencer v. Kenma makes it clear that it is not. And it was not only that example. It cites therein other cases where it's not going to depend on a bunch of ifs that rely on illegal conduct to make an article, a controversy, live. Now, with regard to whether or not the NTA, the notice to appear, was defective, it was. That was the first of the framework because the statute, 1229A1, clearly requires a hearing time, and that is the statute that the Supreme Court in Pereira interpreted. And it did so. What about Mauricio Benitez? In Mauricio Benitez, it relied on Gomez Palacios, but not actually for the NTA lacking a hearing time issue. It was about service. And Gomez Palacios has those two points to it. Gomez Palacios, since Your Honor brought it up, actually relies on the fact that the statute didn't require the notice to appear to have a hearing time. And the Supreme Court has now said, no, the statute does require it. But Mauricio Benitez says Pereira does not apply in this context. It's a narrow time of application. And it cites favorably cases to the contrary of the district court in this very case. True. It does say that. And I guess I was trying to explain that I believe that was dicta with regard to the holding in Mauricio Benitez. So I don't believe that this court is bound by that analysis. And I don't think it is persuasive because Pereira is analyzing the statute, 1229A1, that defines a notice to appear. Pereira holds its definitional. And for the purposes of starting a removal proceeding, the statute requires there to be a notice to appear as defined in the statute. And that's clear not only from the title and the text of that particular statute, as outlined in the brief, but also by the transitional instructions that Congress specified in the Act, IRA-IRA Section 309C2, where it says in order to proceed in these new removal proceedings on cases that had already started, the attorney general could designate other documents as if they were notices to appear to, quote, confer jurisdiction on the immigration judge. Of the existing cases in all the circuits, the Seventh Circuit has a slightly different analysis. Some accept the cure. Some don't accept the cure. Some go contrary to what you're arguing right now. What circuit would you win in? Of the existing cases that we know of, what circuit would you be able to go all the way through these arguments and win in in the existing law right now? So far, none of the circuits have ruled in our favor. But I believe that of the circuits that say the cure option is possible, their serious misstep is that they don't find any glue between the statute and the regulations. There is a glue. There's glue in Section 309C2 that I just mentioned. There's glue in the regulations, the Federal Register, when the agencies promulgated regulations to implement IRA-IRA. They specifically say we are now going to implement these new requirements that are in for a notice to appear. And let me find the language because it was a little misrepresented, I think, in the reply brief. So I want to be sure the Court has it in its mind. The proposed rule implements the language of the amended act, indicating that the time and place of the hearing must be on the notice to appear. The Department will attempt to implement this requirement as fully as possible by April 1, 1997. Language has been used in this part of the proposed rule, recognizing that such automated scheduling will not be possible in every situation, e.g., power outages, computer crashes, slash downtime. And that's from the Federal Register 6244401 in 1997. And so the agency is recognizing that the statute requires there to be a notice to appear at the beginning of the proceeding, that this notice to appear has to have a hearing time. They acknowledge that we're going to try to implement that through these regulations, but there might be some instances when we can't get it done, such as computer crashes or power outages. And that is what is in 8 CFR 1003.18b, the where practicable exception. And so that's what the agency promulgated. Now, Pereira looks at 1229 and says there can't be an exception for these practical circumstances of maybe the computer's down. The statute requires there to be a hearing time in it. And so to the extent that the regulations created this exception, they're rewriting the statute and removing a requirement that Congress put in there for the agencies to follow. But, Counsel, how do you deal with the fact that the word under is textually glued to the stop time rule in 8 U.S.C. 1229a's time and place requirement, but there is no such glue under the regulation? You're talking about, well, there's glue, but what is the glue? So the glue is that there's the other regulation, 8 CFR 1239.1, that specifically references the statute 1229 when it says proceedings commence with a notice to appear. That's how the statute and scheme is structured for proceedings to begin with a notice to appear. And it's not just a procedural requirement. It is defining the classes of cases that are before the immigration judge. It deals with subject matter jurisdiction. 1229a says immigration judges are the people that get to preside over the proceedings and determine an admissibility and deportability. But they don't get to do that for just everyone. They can only do that for people to whom the agency has given a notice to appear. And the Supreme Court says if it doesn't have a hearing time, it's not a notice to appear under 1229. Okay. Assuming, Arguendo, that you are successful on your mootness point, that it's not moot, or that it No, put that to one side. I want to just go through these. Assuming that you win on NTA, assume that you win on CREOR, what do you do with the Seventh Circuit and the fact that it may not be jurisdictional at all? Right. So with regard to that, first I want to emphasize that this is an administrative agency context, and even the Seventh Circuit recognized that the claim processing line of cases were for Article III courts. But assuming that something like claim processing analysis applies, then we need to look at the text, the context, and the history under ARBA to determine whether it is jurisdictional or whether it's claim processing. And going through that analysis, I believe, renders the answer that it is jurisdictional. And the text, we've talked about some. You have Congress saying in that transitional instruction, 309C2, this document confers jurisdiction to the immigration court. And then you have the statute itself, initiation of proceedings, and a notice to appear must be given to the noncitizen, and here's what it includes. And one of those is the hearing time, of course. And then the context. Taken as an entire scheme, IRA-IRA reformed the removal proceedings, and it also allowed other entities, administrative officials, essentially, to determine the inadmissibility and deportability of certain noncitizens. That's in 8 U.S.C. 1225 and 8 U.S.C. 1228. And we refer to them as expedited removal, administrative removal. Those people do not get to go before an immigration judge or phrased otherwise. The immigration judge doesn't get to determine the admissibility and removability of those people. And so what establishes the class of cases that the immigration judge has power over is the notice to appear. That is a prosecutorial decision that the Department of Homeland Security gets to make of who is going to be subjected to these proceedings. So that's part of the context. Again, that we are dealing with an administrative agency, and the city of Arlington teaches that administrative agencies, of course, have to follow statutory directives, and that really when we're looking at what Congress tells an agency to do, the line between jurisdictional versus non-jurisdictional is a mirage because anything outside of what Congress has authorized is going to be ultra viris and not supported action. Then also in context, like in Henderson v. Shinseki, which was a veterans' appeal claim, the court considered that context, that for Henderson, the interest is to make sure veterans have access to the courts to get their claim pursued. And the courts have recognized a rule of lenity in the context of immigration proceedings because of the severe consequences that follow with deportation. Assuming, Arguendo, that you are correct and it is jurisdictional and not a claim processing rule, why don't you nonetheless lose for failure to exhaust? And the Perales-Guzman case appears to really put you in a bind in this. Right. Can you talk to us about that? Yes. Thank you, Your Honor. Perales-Guzman certainly said can't be void ab initio because Congress said you need to follow 132060. Briefly, I think our situation is a little different here because we are dealing with a jurisdictional statutory authority question in Perales. The immigration judge had authority to decide whether or not it was an aggravated felony. And here it's different because we're not sure if the proceedings actually should have started to begin with. And so that goes to our whole void as element argument and that the government cannot prove Mr. Pedrosa had been removed because there was no real removal order. And we cite to this court's case in James, relying on the Ninth Circuit's Noriello Lopez for the proposition that a void order means that you're not going to enforce it, which is essentially what the government is trying to do in this 1326 prosecution, use it to establish an element of the offense. And we would interpret 1326D as requiring there to be an actual, quote, deportation order and that here there is no removal order because the immigration court never had authority to issue one. But 1326 does not require a valid removal for a prosecution to proceed. I think that depends on the definition of valid. I argue that it requires a removal order. And if the immigration court didn't have authority to issue the document that it did, then that is not a removal order. And certainly Mendoza-Lopez requires there to have been a deportation or removal proceeding in order to have a 1326 conviction. But even in the 1326D framework, we can prevail. And that is, again, going back to Mendoza-Lopez. Now, Mr. Pedrosa did waive his appeal rights, but the issue is whether or not that was considered and intelligent. In Mendoza-Lopez, those respondents also were asked, do you want to appeal? And they said no. We accept the deportation. That is not totally clear from the majority in Mendoza-Lopez, but in Chief Justice Rehnquist's dissent, he makes it very clear. That's part of the reason why they're so upset with the majority, because they felt they had gotten judicial purview because they were asked the question about whether to appeal. And they said no, that they didn't want to. But the Mendoza-Lopez majority went on to say that it wasn't considered an intelligent appeal waiver because they didn't know what they were waiving. And that's what happened here with Mr. Pedrosa. He didn't know he could challenge the judge's authority in the first instance. The immigration judge told him, if I make a decision that you disagree with, then you can appeal it. The judge did not explain jurisdiction or authority or power or colloquial words that would be understandable to a pro se immigrant litigant. And so that interchange between Mr. Pedrosa and the immigration judge is not sufficient to be considered an intelligent waiver of appeal. What's your best case for that proposition? Besides Mendoza-Lopez, this court did rule in Partable v. INS that a waiver of counsel in the immigration setting was not valid because the legal issue is really complex and that wasn't clear to the non-citizen when he said, that's right, I don't need a lawyer. So the other prong, of course, is the fundamental unfairness, which goes back to our jurisdictional argument. Essentially, I would say that the actual prejudice prong, if we had to make it, would be that he could not have been removed in a proceeding that wasn't started with a notice to appear. And under Pedrera, there's no notice to appear if there is no hearing time in that. And so that's why there is actual prejudice in this case. Counsel, but we have said that failure to follow a regulation is not a deprivation of due process, and he was, in fact, advised of his ability to appeal. And I'm not complaining about following any regulation. I'm complaining that he did not know that he was appealing, that he had the option of challenging the immigration judge's jurisdiction, and that that was something that he could appeal. So that made his appeal waiver not knowing. He knew he could appeal in general, but he didn't know the circumstances. And in Mendoza-Lopez, that was enough for the court to say he was deprived of judicial review. I see my time is up. Thank you. Thank you, Your Honor. I don't think opposing counsel has given this Court any reason to get on the one side of a 7-1 circuit split on the merits issue in this case. I'll talk about the merits briefly, but I want to address the mootness question. I think opposing counsel said a number of things that are incorrect about mootness. First, opposing counsel said that you can't presume for the government's concrete interest in a case that the defendant might violate the law in the future, citing Spencer v. Chemna. That's a case about a defendant's appeal, and the defendant can't establish his or her concrete interest by saying, I'm going to violate the law in the future, which, of course, makes sense. But the government's interest in any number of matters is always predicated on the fear that a defendant might violate the law. When we move to detain somebody pending appeal, for example, the government's interest is that the person might violate the law either by not showing up for their hearing or by committing a crime that harms the public's safety. The government's interest across a whole panoply of actions is that a person might violate the law, and so we're seeking to restrain them. So it would be an extraordinary holding and not something the Supreme Court has ever said to say the government's concrete interest can't be predicated on the fear that somebody will violate the law in the future. I also heard opposing counsel say that the government's interest on appeal can't be something that the district court did, reversing something that the district court did. It has to be something in the real world. Of course, our initial interest is something in the real world, promoting the public's safety by enforcing the criminal laws, but it's absolutely not true that the government's appellate interest can't in part be to reverse a district court's order. This is not a case cited in the briefs, but because I'm just hearing this point and it's a case I think the panel is probably familiar with, in United States v. Windsor, the case that struck down the Defense of Marriage Act, the Supreme Court in its opinion said that the government's interest on appeal was reversing the district court's order to pay Mrs. Windsor benefits. So it's absolutely not true that the government's appellate interest can't be something that the district court did in seeking to reverse that. And finally, I'll just point the Court to the Chafin case, which we do cite in our briefs, which said encapsulated the Villamonte-Marquez rule and said that the interest in the government, that the government had in Villamonte-Marquez, was that the defendant might reenter the country and encounter the consequences of the appellate ruling. That fits this case like a T. If he reenters the country, he's going to encounter the consequence, if we prevail in the merits, encounter the consequence of the appellate ruling. So that mootness discussion was wrong on a number of counts. I'll turn to the merits. Since Mauricio Benitez, do the courts in the Western District still do it this way and the courts in the Southern District do it the other way? Is that what's happening in the state of Texas, or are you not? I'm asking, do the courts in the Western District find that there's no jurisdiction? They follow the path that the district court filed, applied here.  Not every judge, Your Honor, but a number of judges have found against the government on this issue. This is one reason it's an important issue for us. We are arguing this is an important legal issue for the court, and that's why I'm asking this question. But the courts in the Southern District all go the other way on this. Is that right? I can't speak to that. I don't know the answer to that, Your Honor. At least two of them, because they publish opinions going the other way. Isn't that right? I believe that's true, but I don't know. I think it's Rosenthal and Judge Atlas, I think, maybe. Okay, so you don't know what the lay of the land is. I can't speak to all of this. But there is a district court split in the state of Texas on this issue. There is that, because I believe there's a split even within the Western District among judges. So there's a split on that. I'll just make a couple of quick merits points. Opposing counsel made an argument based on the preambulatory language and proposed rules. I mean, the plain text of the regulations in this case define a notice to appear not to include a date and time. I'm not sure how counsel gets out of that. And we'd be at an exceptionally odd place if neither lawmaking body, neither the agency nor the Congress thought that an immigration judge's jurisdiction had to be predicated on filing a notice to appear with a date and time, and yet somehow we get to the point where the jurisdiction of thousands and thousands of removal proceedings is called into question, even though nobody intended that. Congress said nothing about vesting jurisdiction, and the agency, foreseeing the practical problems with including a date and time, said to vest jurisdiction, you don't need to include a date and time. So it would be exceptionally strange if years and years down the road all of these things are invalidated on a ground that no lawmaking body ever thought should happen. Judge Elroy, you talked about the Seventh Circuit decision and the jurisdictional. Again, this argument was not raised before the agency. Whether you say that's a problem because it's a claim processing rule or that's a problem because you can forfeit jurisdictional arguments or that's a problem because even in Article III, you can forfeit subject matter jurisdiction for purpose of a later collateral proceeding. Any way you cut it, it's a problem that he didn't raise this before the immigration judge, and that alone is a ground to resolve this case. So as I understand it, you mean whichever side you fall on in the 7-1, you think you win even if you fall on the 1? So right now it's 6-1, and the 7-1 would be actually ruling for the defendant if this Court were to rule for the defendant. I don't think that's the kind of circuit split that might go upstairs because it doesn't seem like it makes a big practical difference in most cases. I don't think most defendants in the past raised this issue before the immigration judges. So whether you do it the Seventh Circuit way or the way the other six circuits have done it, I'm not sure it's going to make a big difference in the grand jury. But there's no circuit that runs the gauntlet, so to speak, and comes out the way that the defendant wants on every issue. Correct. And a lot of these circuits did not even consider the 1326 arguments because this issue was presented through an immigration proceeding, not through a criminal prosecution. Thank you. Thank you, Your Honor. Again, I appreciate counsel for the government and for the public defenders. Very technical and very helpful arguments on both sides.